UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

HAROLD STAFFNEY,

                Plaintiff,                Case No. 2:23-cv-24

v.                               Honorable Robert J. Jonker

N. DUNCAN et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff paid the full filing fee.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915A(b) and 42 U.S.C. § 1997e(c). However, the Court's preliminary review of Plaintiff's complaint under the PLRA has brought to light Plaintiff's attempt to join unrelated claims against the defendants into a single lawsuit. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined Defendants Buchanan, Russo, Stain, Corrigan, Atkinson, and Haapala. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

With regard to Plaintiff's claims against Defendants Duncan, the Michigan Department of Corrections (MDOC), and the Director of the MDOC, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails

to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motions for service and to appoint counsel, (ECF Nos. 6 and 19), motion for expedited consideration, (ECF No. 16), and motion for reconsideration, (ECF No. 18).

<u>**Discussion**</u>

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following URF staff: Nurse N. Duncan, Provider Brenda Buchanan, Provider Danya Russo, Nurse Bethany Stain, Warden James Corrigan, and Administrative Assistant Kim Atkinson. Plaintiff also sues the MDOC, "Medical Record Personnel" Heather Haapala, and the Director of the MDOC. Each Defendant is sued only in his or her official capacity. (Compl., ECF No. 1, PageID.1, 10.)

Plaintiff alleges that, in May of 2020, Plaintiff ingested a combination of crushed pills, "as [he] had done for years;" however, on this occasion, Plaintiff passed out a couple of hours later and did not awaken for several hours. (*Id.*, PageID.2.) When Plaintiff awoke, he was in the control center waiting to speak with an unidentified inspector. (*Id.*) He spoke with the inspector, but he "[does not] remember much," only "something to the effect of drugs," and that perhaps he had taken drugs. (*Id.*, PageID.3.)

2

After 25 to 27 hours, Plaintiff was returned to his unit. (*Id.*) Sometime thereafter, Plaintiff was taken to healthcare, where unidentified nurses referred to Plaintiff as "Miracle Man" because he has reportedly "flat-line[d] twice." (*Id.*) When Plaintiff said that his chest hurt, an unidentified nurse told Plaintiff that Nurse Duncan and non-party Officer Dunkel "worked on" Plaintiff and "brough[t] [him] back" using, among other things, two shots of naloxone hydrochloride. (*Id.*) Plaintiff was told that it was expected that his chest would hurt. (*Id.*) Plaintiff continued to complain of burning in his chest and shortness of breath. (*Id.*)

Nearly two years later, Plaintiff was seen for a healthcare appointment in August 2022. (*Id.*, PageID.4.) During Plaintiff's August 2022 healthcare appointment, Defendant Duncan told Plaintiff that, when Plaintiff collapsed in May 2020, the "nurse or office" thought that drugs were the cause. (*Id.*, PageID.4.) "[T]he nurse shot [Plaintiff] with naloxone hydrochloride." (*Id.*, PageID.5.) Defendant Duncan "tried and tried" to revive Plaintiff and "finally he did (while sitting down) a drop elbow twice." (*Id.*) Defendant Duncan explained that Nurse Dunkel then took over and was able to revive Plaintiff and save Plaintiff's life. (*Id.*)

During the August 2022 healthcare appointment, Plaintiff was also examined by an unidentified provider after Defendant Duncan went to get the provider. (*Id.*) The unidentified provider touched Plaintiff's sternum and told Plaintiff that there was "a problem." (*Id.*)

Sometime thereafter, the timing of which is unclear, Plaintiff asked to be seen by a medical provider because he was in pain. (*Id.*) Defendant Russo, Plaintiff's new provider, refused to give Plaintiff anything for pain, telling Plaintiff that she would see Plaintiff for an appointment in September 2022. (*Id.*)

Also following Plaintiff's August 2022 appointment, Plaintiff was told that he had tested positive for COVID-19. (*Id.*) Plaintiff was placed in a cell with another person who had tested

positive. (*Id.*, PageID.6.) During that time, an unidentified nurse came and took blood from Plaintiff twice, checked Plaintiff's prostate and liver, and gave Plaintiff Gatorade. (*Id.*)

Plaintiff was allowed to return to the unit after twelve days but, on October 22, 2022, he "took [a] turn for the worst." (*Id.*) Plaintiff was taken to healthcare and was given an electrocardiogram. (*Id.*) Plaintiff was then taken to the hospital where he was told that there was inflammation on his left rib side. (*Id.*) On November 3, 2022, Defendant Duncan told Plaintiff that something should have been done about Plaintiff's ribs "6–8 weeks after the injury." (*Id.*) Plaintiff continues to experience chest pain and shortness of breath. (*Id.*) He has requested copies of his chest x-rays, but the medical office has not sent them. (*Id.*) Plaintiff also states that he hears "sounds in [his] neck," but does not know the cause. (*Id.*, PageID.7.)

Additionally, Plaintiff has experienced a "light blood spot" and "heavy blood" from his penis. (*Id.*) Plaintiff was scheduled for surgery one and a half years ago, but test results were negative for prostate cancer, so Plaintiff cancelled his surgery. (*Id.*, PageID.4, 7.) Plaintiff recently asked that Defendant Russo schedule an examination of Plaintiff's prostate, but Defendant Russo cancelled Plaintiff's appointment without notice and has not responded to Plaintiff's additional requests. (*Id.*, PageID.7.) Plaintiff also claims that Defendant Buchanan "failed to properly diagnose [Plaintiff]s prostate gland," but does not elaborate as to the basis for this claim. (*Id.*, PageID.4.)

Finally, Plaintiff has a right-foot deformity. (*Id.*, PageID.8.) He claims that healthcare is refusing to honor his prescription shoe detail. (*Id.*) The non-party quartermaster once ordered shoes of the wrong size. (*Id.*) In October (presumably 2022), Defendant Russo ordered that healthcare measure Plaintiff's feet; however, Defendant Russo has not sent the new shoe detail. (*Id.*)

On November 4, 2022, when Plaintiff went to healthcare for his COVID-19 booster shot, he spoke with Defendant Russo. (*Id.*) Plaintiff asked when he would receive his new shoe detail, to which Defendant Russo responded, "when you stop complaining about you[r] chest." (*Id.*) When Plaintiff told Defendant Atkinson about this interaction, Defendant Atkinson told Plaintiff that she did not believe that Defendant Russo said those words. (*Id.*, PageID.9.)

Plaintiff seeks to bring claims for violation of Plaintiff's Eighth Amendment rights and rights under the Michigan State Constitution, (*id.*, PageID.2), as well as various types of "tortious conduct," (*id.*, PageID.20, 22). Plaintiff also alleges violations of Michigan statutes related to patient access to medical records. (*Id.*, PageID.4, 22.) Plaintiff requests damages and declaratory relief. (*Id.*, PageID.19, 22, 24, 26.)

## II.    Misjoinder

Plaintiff brings this action against nine Defendants, alleging that he was harmed while at URF, in May 2020, and again at various times over two years later, from August through November 2022. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. At this juncture and prior to reviewing the merits of Plaintiff's allegations, the Court reviews whether Plaintiff's claims are misjoined.

### A.    Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will

5

arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

6

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)....
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's

request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. The first event described within Plaintiff's complaint took place in May 2020. (ECF No. 1, PageID.2.) On an unidentified date in May 2020, Plaintiff ingested a combination of crushed pills, became unconscious, and was revived by Defendant Duncan and non-party Officer Dunkel. Plaintiff claims that he was injured by Defendant Duncan's efforts to resuscitate him, including Defendant Duncan's use of naloxone hydrochloride. The manner in which Plaintiff presents his factual allegations supports identifying Defendant Duncan as the appropriate starting point for the joinder analysis. By accepting Plaintiff's own presentation of the facts, the Court is considering the issue of joinder as Plaintiff has presented it in the complaint.

Plaintiff does not bring any additional claims against Defendant Duncan. Plaintiff alleges that he learned more about the May 2020 incident during an August 2022 medical appointment, (ECF No. 1, PageID.4–5); however, Plaintiff does claim that Defendant Duncan caused Plaintiff any further harm at this or any other time. Plaintiff's later references to Defendant Duncan consist only of Defendant Duncan's efforts in assisting Plaintiff in obtaining medical care. (*Id.*, PageID.5 (explaining that Plaintiff was examined by an unidentified provider after Defendant Duncan went

to get the provider)); (*Id.*, PageID.6 (alleging that Defendant Duncan told Plaintiff that something should have been done about Plaintiff's ribs "6–8 weeks after the injury").)

Liberally construed, the Court finds that Plaintiff's attempts to name the MDOC and its Director could, theoretically, arise out of this May 2020 incident. However, no matter how liberally the Court construes the complaint, Plaintiff has not stated at least "one claim against each [remaining] defendant [that] is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (citations omitted). Plaintiff does not allege that any other Defendant was involved in the May 2020 efforts to resuscitate Plaintiff. The first allegations against any Defendant occurred over two years later, when Defendant Russo denied Plaintiff's request for medical care related to pain. Clearly, the time periods involved between the claims are separated by an extensive gap. Additionally, the allegedly harmful efforts to resuscitate Plaintiff were not acts that remained ongoing in 2022; the actions of the remaining Defendants were entirely separate. Although the allegations, read in the light most favorable to Plaintiff, could describe a highly attenuated relationship between the allegedly harmful efforts to resuscitate Plaintiff in May 2020, and the denial of medical care in 2022, that relationship simply is not enough to conclude those claims *arise* out of the same transaction or occurrence. *See Proctor*, 661 F. Supp. 2d at 778. There is no transaction or occurrence, *see* Fed. R. Civ. P. 20(a)(2)(A), nor is there a question of law or fact, *see* Fed. R. Civ. P. 20(a)(2)(B), that is common to all Defendants. Accordingly, the Court concludes that Defendants Buchanan, Russo, Stain, Corrigan, Atkinson, and Haapala are misjoined.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action Defendants Buchanan, Russo, Stain, Corrigan, Atkinson, and Haapala and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil

Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time. . . .'" (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. To Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v.*

*Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Plaintiff's complaint, describing events that took place in August through November 2022, as related to Defendants Buchanan, Russo, Stain, Corrigan, Atkinson, and Haapala, provides no indication that the statute of limitations has or will run on Plaintiff's claims against these Defendants, and Plaintiff has provided no basis for this Court to conclude that Plaintiff would suffer gratuitous harm if claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Buchanan, Russo, Stain, Corrigan, Atkinson, and Haapala from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

If Plaintiff wishes to proceed with his claims against Defendants Buchanan, Russo, Stain, Corrigan, Atkinson, and Haapala, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee. Plaintiff is cautioned that he must limit all future actions to defendants and claims that are transactionally related to one another. Plaintiff is cautioned that the failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

## A.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff asserts violations of his Eighth Amendment rights. (ECF No. 1, PageID.2.)

### 1.    Official Capacity Claims and Claims Against the MDOC

As noted *supra*, Plaintiff sues Defendants in their official capacities only. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental

entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771. Therefore, the Court will dismiss all of Plaintiff's federal claims against the MDOC, as well as his claims for monetary damages against Defendants Duncan and the Director of the MDOC in their official capacities, on grounds of immunity and for failure to state a claim.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief may constitute an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). However, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's

sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff is no longer confined at URF, which is where he avers that Defendant Duncan is employed and where the harm allegedly occurred. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Moreover, the declaratory relief that Plaintiff seeks is not prospective. Instead, Plaintiff seeks relief for past harm. However, past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Therefore, Plaintiff's claims for declaratory relief against Defendants in their official capacities are also properly dismissed.

2.      **Individual Capacity Claims**

Even if Plaintiff had brought claims against Defendants Duncan and the Director of the MDOC in their individual capacities, Plaintiff fails to allege sufficient facts to show a violation of Plaintiff's Eighth Amendment rights.

In keeping with the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment, U.S. Const. amend. VIII, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically

15

serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component of the Eighth Amendment's deliberate indifference standard requires an inmate to plead facts that would demonstrate that that the prison official had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

16

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

"[T]he right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis of severe constipation, even "in light of [the prisoner's] substantial weight loss and sharp stomach pain[,]" amounted only to negligence given the prisoner also complained of his "inability to have a bowel movement for several days and other stomach pains, which could have been consistent with [the doctor's] diagnosis"). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

### a.    Defendant Duncan

Plaintiff alleges that he took a combination of crushed pills and fell unconscious for several hours. (ECF No. 1, PageID.2.) He claims that Defendant Duncan improperly "shot [Plaintiff] with naloxone hydrochloride" while Defendant Duncan "tried and tried" to revive Plaintiff. (*Id.*, PageID.2, 5.) Plaintiff also claims to have suffered injuries to his ribs during Defendant Duncan's efforts to revive him. (*Id.*, PageID.6.)

While the Court does not doubt that becoming unconscious for several hours after ingesting a combination of crushed pills represents a serious medical need, the Court finds that Plaintiff's complaint is devoid of facts that would plausibly suggest that Defendant Duncan was deliberately indifferent to Plaintiff's medical need. This is far from a case of complete denial of medical treatment. Even if Defendant Duncan misdiagnosed Plaintiff's ailment, the Court cannot conclude that Defendant Duncan's efforts to revive Plaintiff, even if ultimately harmful, were "so woefully

inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 605. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Duncan.

### b.        Director of the MDOC

Plaintiff also names as a Defendant the Director of the MDOC; however, the Director of the MDOC is not mentioned in the factual allegations of the complaint.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Because Plaintiff fails to make any factual allegations against mention the Director of the MDOC in the body of his complaint, his allegations fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent Plaintiff intended to impose liability on the Director of the MDOC as a supervisor of persons who participated directly in the unconstitutional conduct, it is well-settled that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff fails to allege any action whatsoever by the Director of the MDOC, individually. Accordingly, the Court will dismiss Plaintiff's action against Defendant Director of the MDOC.

### B.    Claims Under Michigan State Law

In addition to bringing claims for violation of Plaintiff's Eighth Amendment rights under § 1983, Plaintiff also seeks to bring claims under Michigan state law for violation of the Michigan Constitution, tortious conduct, and the violation of statutes related to access by patients to medical records.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, Plaintiff's state law claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state court.

## IV.   Pending Motions

Plaintiff has filed two motions for service and to appoint counsel, (ECF Nos. 6 and 19), a motion for expedited consideration, (ECF No. 16), and a motion for reconsideration of the Court's decision to deny Plaintiff leave to proceed *in forma pauperis*, (ECF No. 18). Plaintiff also filed a supplement to his motion for service. (ECF No. 21.) The Court will address each of Plaintiff's requests in turn.

First, as to Plaintiff's motions for service and for expedited consideration, in light of the Court's disposition of this case, Plaintiff's motions will be denied as moot.

With respect to Plaintiff's motions to appoint counsel, Plaintiff states that, in determining whether to appoint counsel, this Court may consider a plaintiff's ability to investigate the case, whether there is conflicting evidence and a need for cross examination, and the complexity and

21

difficulty of the case. (ECF No. 19, PageID.51–52.) Without elaborating, Plaintiff only requests that "an attorney be appointed to the three factors mentioned above." (*Id.*, PageID.52.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's requests for appointment of counsel, (ECF Nos. 6 and 19), will, therefore, be denied.

Finally, Plaintiff brings a motion for reconsideration, asking the Court to reconsider its decision to deny Plaintiff leave to proceed *in forma pauperis*. (ECF No. 18.) In an opinion and order, (ECF Nos. 14 and 15), entered on March 6, 2023, the Court denied Plaintiff's application for leave to proceed *in forma pauperis*. The Court noted that Plaintiff has three strikes under 28 U.S.C. § 1915(g) and, therefore, could proceed *in forma pauperis* only if Plaintiff's allegations fell within the "imminent danger" exception to the three-strikes rule. Even taking Plaintiff's allegations as true, the Court concluded that Plaintiff's allegations did not satisfy the imminent danger exception. Subsequently, Plaintiff paid the full filing fee in this action.

Plaintiff's present motion for reconsideration is governed by Rule 7.4(a) of this Court's Local Rules. Western District of Michigan Local Civil Rule 7.4(a) provides that "motions for reconsideration which merely present the same issues ruled upon by the court shall not be granted." Further, reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the court and the parties have been misled . . . [and] that a different disposition of the case must result from a correction thereof." *Id.*

Plaintiff contends that the Court committed palpable error by concluding that Plaintiff's allegations did not fall within the "imminent danger" exception to the three-strikes rule. He claims, without support, that the Court is biased against Plaintiff, (ECF No. 18, PageID.36), and he goes on to primarily restate the allegations of his complaint,[1] emphasizing that, to date, no one has told Plaintiff what is wrong with him, (*id.*, PageID.37). As in his complaint, Plaintiff describes that he has been given extensive medical treatment, including hospitalization, when necessary, even if he has not been told the details of his medical conditions. Upon consideration of Plaintiff's motion, the Court finds that Plaintiff fails to demonstrate a palpable error in the Court's decision deny Plaintiff leave to proceed *in forma pauperis*.

"The imminent danger exception [in § 1915(g)] is essentially a pleading requirement subject to ordinary principles of notice pleading." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (quotation marks, citation, and alteration removed). The plaintiff "must therefore show that his complaint alleged facts from which a court, informed by its judicial

---

[1] Plaintiff has alleged for the first time in his motion for reconsideration that he experienced similar instances of unconsciousness after ingesting pills in 2011 and 2017. (ECF No. 18, PageID.39.) These allegations do not demonstrate imminent danger of a serious physical injury. Moreover, because these allegations were not contained in the complaint, they cannot demonstrate any palpable error in the Court's original decision.

23

experience and common sense, could draw the reasonable inference that [he] was under an existing danger at the time he filed his complaint." *Id.* (quotation marks, citation, and brackets removed).

To fall within the statutory exception to the "three-strikes" rule, a prisoner must allege that the threat or prison condition is "real and proximate," and that the danger of serious physical injury exists at the time the complaint is filed. *See Rittner v. Kinder*, 290 F. App'x 796, 797–98 (6th Cir. 2008). "Thus, a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id.* Additionally, "[a] physical injury is 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019).

As the Court previously explained, Plaintiff does not claim that any of his itemized health conditions—left-sided chest pain, shortness of breath, light spotting of blood, and a lack of prescription shoes—currently pose any danger of death or serious injury, particularly where Plaintiff has tested negative for prostate cancer and has been provided extensive medical treatment related to his chest pain. Accordingly, the Court will deny Plaintiff's motion for reconsideration, (ECF No. 18).

### <u>Conclusion</u>

The Court has reviewed Plaintiff's complaint under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that Defendants Buchanan, Russo, Stain, Corrigan, Atkinson, and Haapala are misjoined. The Court will drop them as parties and dismiss Plaintiff's claims against them without prejudice.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's state law claims without prejudice and will deny Plaintiff's motions for service and to appoint counsel, (ECF

Nos. 6 and 19), motion for expedited consideration, (ECF No. 16), and motion for reconsideration, (ECF No. 18).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's federal claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:      May 8, 2023                           /s/ Robert J. Jonker
                                                  Robert J. Jonker
                                                  United States District Judge